UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ERIC L. HICKS,

      Plaintiff,

v.              Case No. 16-cv-284-pp

CHARLES FACKTOR, *et al.*,

      Defendants.

---

**ORDER GRANTING THE DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT (DKT. NO. 30), GRANTING THE
PLAINTIFF'S THIRD MOTION TO APPOINT COUNSEL (DKT. NO. 45), AND
DENYING THE PLAINTIFF'S MOTION FOR AN ORDER REQUIRING THE
DEFENDANTS TO MEET WITH THE PLAINTIFF (DKT. NO. 47)**

---

  Plaintiff Eric L. Hicks, a Wisconsin state prisoner who is representing himself, filed this case under 42 U.S.C. §1983, alleging that the defendants violated his civil rights at the Green Bay Correctional Institution ("GBCI"). Dkt. No. 1. On March 31, 2016, Judge Rudolph Randa, who was assigned to the case at the time, issued a screening order allowing the plaintiff to proceed with Eighth Amendment claims against Captain Lesatz, Correctional Officer Glades, and Complaint Examiners Michael Mohr and Charles Facktor. Dkt. No. 8. Defendants Mohr and Facktor have filed a motion for partial summary judgment. Dkt. No. 30. The defendants concede that the plaintiff's excessive force claims against Lesatz and Glades involve disputed facts that require a trial. Dkt. No. 40 at 2. The plaintiff has filed a motion asking the court to order

1

the defendants to meet with him to attempt to resolve the case short of trial. Dkt. No. 47. He also has filed a third motion to appoint counsel. dkt. no. 45.

## I. MOTION FOR PARTIAL SUMMARY JUDGMENT

### A. Facts[1]

#### 1. *Parties*

The plaintiff is an inmate at GBCI. Dkt. No. 41, ¶ 1. Michael Mohr is an Inmate Complaint Examiner ("ICE") at GBCI (id., ¶ 2); Charles Facktor is a Corrections Complaint Examiner ("CCE") for the Department of Corrections (id., ¶ 3).

#### 2. *The Undisputed Facts*

This case arises from an offender complaint that the plaintiff filed on October 17, 2013 against Correctional Officer Glades, "Unknown CO," and Captain Lesatz, alleging that they used excessive force during his transfer to disciplinary segregation. Id., ¶ 5. According to the offender complaint, Glades and "Unknown CO" (under the supervision of Lesatz) went to the plaintiff's cell on October 6, 2013 to escort him to the segregation unit. Id. Dkt. No. 33-1 at 11. Glades and "Unknown CO" cuffed the plaintiff's wrists, and the plaintiff stated at that time that he had an injury on his right shoulder. Id. No one

---

[1] The court takes facts in this section from the "Defendants' Reply to Plaintiff's Response to Defendants' Proposed Findings of Facts," dkt. no. 41, specifically, the attached exhibit dkt. no. 33-1. Where the plaintiff objects to the proposed facts without citation to evidentiary material, those facts are deemed admitted for the purpose of deciding summary judgment. Civ. L. R. 56(b)(2)(B)(i) and (b)(4). The court takes additional facts from the plaintiff's sworn complaint, dkt. no. 1, which the court construes as an affidavit at the summary judgment stage. Ford v. Wilson, 90 F.3d 245, 246-47 (7th Cir. 1996).

responded to the plaintiff's comment. Id. Someone then ordered the plaintiff to kneel, and they cuffed his ankles. Id.

Glades and "Unknown CO" placed their hands on the plaintiff's biceps and ordered the plaintiff to stand up. Id. As the plaintiff stood up, Glades and "Unknown CO" pulled up on the plaintiff's shoulder, "forcing [the plaintiff's] shoulder to rise slightly." Id. at 12. The plaintiff stated, "you're hurting me," but they continued to pull upward until the plaintiff came to his feet. Id.

Later, all four individuals walked down the hall toward the segregation unit. Id. Several inmates spoke to the plaintiff along the way, saying things like "stay up bro" and "write me when you get a chance." Id. At the end of the hall, the plaintiff heard a voice that he didn't recognize. Id. When the plaintiff turned around to see who it was, Glades "roughly yanked [the plaintiff's] arm upwards and forward." Id. at 13. The plaintiff felt "excruciating pain that brought tears to [his] eyes, and, made [him] yell out." Id. He asked Lesatz to order the COs to "lighten up" and Lesatz told the plaintiff to "just shut up." Id.

Glades and "Unknown CO" continued to apply force to the plaintiff's arms until they reached the security gate at the end of the hall. Id. The plaintiff asked to see a nurse, and "they" told him to file a blue slip instead. Id. A few days later, the plaintiff went to see the nurse, and learned that he had a "new injury to the nerve." Dkt. No. 1 at 3.

On October 17, 2013, the plaintiff filed offender complaint GBCI-2013-20153 regarding the incident. Dkt. No. 33-1 at 11. Inmate Complaint Examiner ("ICE") Mohr interviewed Lesatz about what happened. Dkt. No. 41, ¶ 6.

3

According the ICE report, Lesatz told Mohr that the plaintiff did not notify them of his shoulder injury until after he was already on his feet and halfway down the hall. Dkt. No 33-1 at 2. Lesatz stated that had the plaintiff informed them of his injury earlier, they may have used another method of escorting the plaintiff. Id. Based on Lesatz's statement, Mohr concluded that there were "no work rule violations" and he recommended dismissing the complaint. Id.; see also Dkt. No. 41, ¶ 7. The warden (not a defendant in the case) accepted the recommendation, and dismissed the complaint on November 27, 2013. Dkt. No. 41, ¶ 8.

On or around December 9, 2013, the plaintiff filed an appeal of the decision dismissing his offender complaint. Id., ¶ 9; Dkt. No. 33-1 at 5. Among other things, the plaintiff asserted that videotape footage would have proved what really happened. Dkt. No. 33-1 at 19-23. Facktor reviewed Mohr's decision and recommended dismissing the appeal, because Mohr's decision "reasonably and appropriately" addressed the issue. Dkt. No. 33-1 at 6. Facktor concluded that the plaintiff "presented no information" to warrant recommending overturning the decision. Id. The Secretary of the Department of Corrections (not a defendant in the case) accepted Facktor's recommendation and dismissed the appeal on December 19, 2013. Id. at 7.

B. Discussion

1. *Summary Judgment Standard*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show

4

that there is no genuine issue as to any material fact and that the moving party is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(c); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). The movant bears the burden of establishing that there are no genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets this burden, the non-movant must designate specific facts that establish that there is a genuine triable fact. Fed. R. Civ. P. 56(e). The court grants summary judgment when no reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

2. *Liability under § 1983*

Liability under §1983 is predicated on a defendant's personal involvement in the constitutional deprivation. Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995). "An official satisfies the personal responsibility requirement of section 1983 . . . if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent." Id. (quoting Crowder v. Lash, 687 F.2d 996, 1005 (7th Cir. 1982)). He "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." Id. (quoting Jones v. City of Chicago, 856 F.2d 985, 992 (7th Cir. 1988)).

"Public officials do not have a free-floating obligation to put things to rights . . . [and] no prisoner is entitled to insist that one employee do another's job." Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009). This means that liability under §1983 depends on each defendant's knowledge and actions, not on the knowledge or actions of people whom they supervise. Id. at 594. This

5

principle applies to supervisors, who are in charge of the day-to-day conduct of prison officials, as well as inmate complaint examiners, who review offender complaints alleging a constitutional violations. Id. at 595.

It is possible for inmate complaint examiner to do his or her job with deliberate indifference towards an inmate's constitutional rights. Id. "[F]or example, a complaint examiner [could] routinely send each grievance to the shredder without reading it" or could "intervene[] to prevent the medical unit from delivering needed care..." Id. An inmate complaint examiner is not liable, however, for "carr[ying] out [his] or her job exactly as [he or] she was supposed to." Id. This includes rejecting complaints as untimely, as well as dismissing complaints on the merits. Id. 595-96. To that end, "a grievance examiner cannot violate the constitution by denying a complaint about a completed act of harm." Turner v. Hoechst, No. 15-CV-23-JDP, 2016 WL 492323, at *2 (W.D. Wis. Feb. 5, 2016). "This makes sense because the examiner could take no action to undo the harm done to the prisoner." Id.

    3.    *Analysis*

The undisputed facts show that Mohr and Facktor did their jobs exactly as they were supposed to do; they reviewed a complaint alleging a completed act of harm, and the evidence relating to that complaint, and decided that the evidence did not warrant any action. While the plaintiff may disagree with Mohr and Facktor's interpretation of the evidence, or the weight that they gave to certain pieces of evidence, the plaintiff has pointed to no evidence support his suggestion that they tampered with or "concealed" evidence. The fact that Mohr

6

and Facktor did not review videotape footage, or give more weight to inconsistencies in the officer's statements, does not demonstrate the existence of a "conspiracy." Quite the opposite—there is a record of the plaintiff's complaint, and a record of Mohr's and Facktor's review of that complaint and their final action. The evidence shows that these two defendants did not "send [the plaintiff's] grievance to the shredder without reading it" or "prevent the medical unit from delivering needed care."

The court will grant summary judgement in favor of Mohr and Facktor, and will dismiss them as defendants.

## II. PLAINTIFF'S THIRD MOTION TO APPOINT COUNSEL

In his third motion to appoint counsel, the plaintiff reminds the court that he has made repeated efforts to find counsel on his own. Dkt. No. 45 at 1. He also reminds the court that in its order denying his second motion to appoint counsel, the court stated that if the plaintiff's case survived summary judgment, he could renew his motion for appointment of counsel. Id. at 2 (referring to Dkt. No. 42). It is now clear that the plaintiff's claims against Lesatz and Glades have survived summary judgment. The plaintiff also has filed a motion, which the court addresses below, asking for help in trying to negotiate a settlement. The court agrees that it is now time to appoint counsel to represent the plaintiff. The court will recruit counsel for the plaintiff. It may take a bit of time—the court asks the plaintiff to be patient. But the court will start the process as soon as possible.

## III. PLAINTIFF'S MOTION REQUESTING AN ORDER REQUIRING DEFENDANTS TO MEET WITH PLAINTIFF

The plaintiff has asked the court to "suspend the rules," and order the defendants to meet with him to discuss settlement. Dkt. No. 47. There is no need for the court to "suspend" any rules, and the court will not order the defendants to meet with the plaintiff. The court believes that what the plaintiff seeks is an opportunity to negotiate with the defendants, and the court anticipates that the defendants would like that opportunity, as well.

What the court has done in these situations in the past—with some success—is offer the parties the opportunity to participate in mediation facilitated by a magistrate judge. What happens is this: if both sides agree, the court refers the case to one of the six magistrate judges in the Eastern District. The magistrate judge acts as a "facilitator," not as a judge. The magistrate judge helps the parties negotiate. The magistrate judge may offer possible settlement options. He or she may give each side an opportunity to privately tell the magistrate judge what that party is willing to accept, and may take offers and counter-offers back and forth between the parties. The magistrate judge also may evaluate a party's settlement offer, and give the party the magistrate judge's opinion about whether that offer is reasonable. Because the magistrate judge has judicial experience, he or she often will give each party a frank evaluation of how the magistrate judge thinks a jury might view the case, which can help each party analyze whether it is worth the party's time and effort to go to trial. At the end of the day, the magistrate judge does not decide the case; the parties do. If the parties are able to reach an agreement with the magistrate judge's help, the magistrate judge notifies this court of that fact. If

the parties aren't able to reach an agreement, the magistrate judge lets the court know that, too, and then court then talks with the parties to select a trial date.

Mediation with a magistrate judge is free of charge to the parties. It is confidential; the magistrate judge does not share what the parties tell him or her with this court, or with anyone outside of the mediation. If the parties are not able to settle the case, the magistrate judge does not tell this court anything about what happened in the mediation—he or she does not tell the court, "Well, the defendant was very difficult," or "the plaintiff was just being stubborn." All the magistrate judge tells this court is whether or not the parties were able to agree.

As the court indicated above, it is going to recruit counsel to represent the plaintiff. Once an attorney has come on board, the court will hold a telephone conference with the lawyers, and find out whether both parties are interested in mediation. If so, the court will refer the case to a magistrate judge.

## III. CONCLUSION

The court **GRANTS** the motion for partial summary judgment filed by defendants Facktor and Mohr, Dkt. No. 30, and **ORDERS** that Charles Facktor and Michael Mohr are **DISMISSED** as defendants.

The court **GRANTS** the plaintiff's motion to appoint counsel. Dkt. No. 45.

The court **DENIES** the plaintiff's motion for an order requiring the

defendants to meet with the plaintiff. Dkt. No. 47. Once counsel has appeared, the court will discuss mediation with the parties.

Dated in Milwaukee, Wisconsin this 23rd day of June, 2017.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**